IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL A. CORBETT, | ) | |
| Petitioner, | ) | Civil Action No. 09-174 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| PENNSYLVANIA DEPARTMENT | ) | |
| OF CORRECTIONS, <u>et al.</u>, | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

### II. REPORT

Before the Court is a petition under 28 U.S.C. § 2254 for a writ of habeas corpus filed by the Petitioner, Michael A. Corbett, who is a state prisoner. He claims that the Pennsylvania Board of Probation and Parole (the "Board") has improperly extended his maximum sentence date and therefore he is now serving time beyond that which was imposed by the Court of Common Pleas of Erie County, Pennsylvania.[1] Corbett contends that the Board's actions violated his due process rights and the Double Jeopardy Clause (Claim 1); the separation of powers doctrine and the Supremacy Clause (Claim 2); and

---

[1] Corbett is currently serving the term of imprisonment that the Board imposed and which is at issue in this proceeding. When that term expires, he must then serve a consecutive term of imprisonment of 1 ½ to 3 years imposed by the Court of Common Pleas of Erie County at Criminal Docket No. 2178 of 2006 (discussed below).

1

the *Ex Post Facto* Clause (Claim 3). [ECF No. 1 at 5-9.] In Claim 4, he contends that the Board's decision "is an usurpation of judicial authority." [Id. at 10].

### A. Relevant Background

In 2000, Corbett was charged with burglary and several related offenses by Information filed at Criminal Docket No. 896 of 2000 in the Court of Common Pleas of Erie County. He entered a guilty plea and on September 26, 2000, the court sentenced him on his conviction of burglary (Count 1) to, *inter alia*, a term of imprisonment of not less than 11½ months or more than 23½ months, effective August 28, 2000.[2] The court also sentenced him to a concurrent 5-year term of probation. (Resp's Ex. A).

Corbett was paroled from this sentence by the court, but subsequently appeared before the sentencing judge on May 28, 2003, for a parole/probation revocation proceeding. (Pet's Ex. 2; Resp's Ex. A at 7-8). At that time, Corbett was sentenced upon his conviction of burglary to a term of imprisonment of not less than 2 years or more than 6 years. With credit for all prior custody on this charge, this sentence had an effective date of May 13, 2002. (Resp's Ex. A at 3, 8). The minimum term of this sentence was set at May 13, 2004, and the maximum term was set at May 13, 2008. (Resp's Exs. B-C).

Corbett was placed in the Department of Corrections (the "DOC's") Motivational Boot Camp Program. Under this program, "[u]pon certification by the department of the inmate's successful completion of the program, the Pennsylvania Board of Probation and Parole shall immediately release the inmate on parole, notwithstanding any minimum sentence imposed in the case." 61 P.S. § 1127.

---

[2]  Petitioner received a credit for 30 days of pretrial custody for time spent in the Erie County Jail. (See Resp's Ex. A).

Corbett was paroled from that program prior to the expiration of his minimum sentence date pursuant to an Order entered by the Board on January 30, 2003. (See Pet's Ex. 8A). He was actually released from custody on March 22, 2004. (Resp's Ex. D).

On August 7, 2006, Corbett was arrested on new criminal charges in Erie County relating to a Criminal Attempt of the offense of Luring a Child into a Motor Vehicle. (Resp's Exs. F & H). On that same date, the Board detained Corbett on a parole violation warrant pending disposition of the new charges. (Resp's Exs. E & H). An Information charging him with both Criminal Attempt of the offense of Luring a Child into a Motor Vehicle or Structure and Harassment was subsequently filed at Criminal Docket No. 2178 of 2006 in the Court of Common Pleas of Erie County. (Resp's Ex. F). Six months later, on February 6, 2007, he entered a guilty plea to the new charges.

On May 2, 2007, the court sentenced Corbett to a term of imprisonment of not less than 18 months nor more than 36 months on his conviction of Criminal Attempt of the offense of Luring a Child into a Motor Vehicle. His Harassment conviction merged with his other conviction for sentencing purposes. (Resp's Exs. G & F). The sentence was ordered to be served consecutive to the sentence previously imposed at Criminal Docket No. 896 of 2000.

On July 23, 2007, the Board issued the Notice of Board Decision at issue here. Pursuant to 37 Pa.Code. 75.2. "If the Board orders the recommitment of a parolee as a convicted parole violator, the parolee shall be recommitted to serve an additional part of the term which the parolee would have been compelled to serve had he not been paroled, in accordance with the following presumptive ranges[.]"[3]

---

[3] 37 Pa.Code § 75.1 provides:

    (a) Presumptive ranges of parole backtime to be served will be utilized if a parolee is convicted of a new criminal offense while on parole and the Board orders recommitment as a convicted parole violator after the appropriate revocation hearing; (b) The presumptive ranges of parole backtime are intended to structure the discretion of the Board while allowing for individual circumstances in terms of mitigation and aggravation to be considered in the final decision; (c) The Board may deviate from the presumptive range

The Board's regulations do not specifically indicate a presumptive range for the offense of Luring a Child into a Motor Vehicle. Therefore, in this case the Board had to apply the range of a closely related offense to determine a presumptive range. 37 Pa. Code § 75.1. It chose the offense of False Imprisonment, which has a presumptive range of 6 to 12 months. 37 Pa. Code § 75.2. Combining this with the 1 to 6 month range for the Harassment conviction resulted in an overall range of 6 to 18 months. The Board thus ordered that Corbett be recommitted as a convicted parole violator and directed that he serve 18 months of backtime, which is at the very top of the presumptive range. (Pet's Ex. 3; Resp's Exs. I-K). This Board action also reflected a recalculation of Corbett's parole violation sentence maximum date to September 10, 2011.

Petitioner, through Attorney Kent D. Watkins, Esq., requested administrative review of the Board's decision. He contended that the Board cannot recommit him for both offenses because the lesser offense of Harassment merged into the offense of Criminal Attempt to Lure a Child Into a Motor Vehicle. He also argued that he did not receive credit for all of the time he served under the Board's warrant and that his recommitment period was excessive. On November 2, 2007, the Board denied Petitioner's request for relief and issued the following response to Attorney Watkins:

> [T]he 18-month recommitment period imposed by Board still falls within the presumptive range for your client's offenses and any challenge to that length of time is not a valid basis for administrative relief. Smith v. Pennsylvania Board of Probation and Parole, 574 A.2d 558 (Pa. 1990).

---

> or determine that recommitment should not occur, provided written justification is given; *(d) The presumptive ranges are intended to directly relate to the severity of the crime for which the parolee has been convicted; (e) The severity ranking of crimes listed in § 75.2 (relating to presumptive ranges for convicted parole violations) is not intended to be exhaustive, and the most closely related crime category in terms of severity and the presumptive range will be followed if the specific crime which resulted in conviction is not contained within the listing.*

(Emphasis added).

4

> Additionally, when your client was paroled on March 22, 2004 his max date was May 13, 2008, which left 1513 days remaining on his sentence. Your client did not receive any credit on his original sentence for the period he was incarcerated from August 7, 2006 to July 20, 2007 because the current record reflects that he was not confined solely on the Board's warrant during that period. Thus, credit for that period had to apply to Mr. Corbett's new sentence. Gaito v. Board of Probation and Parole, 412 A.2d 568 (Pa. 1980). Your client became available to begin serving his original sentence again on July 20, 2007, when the Board obtained the necessary signatures to recommit Mr. Corbett as a parole violator. Campbell v. Pennsylvania Board of Probation and Parole, 409 A.2d 980 (Pa. Commw. 1980). Adding 1513 days to that date yields a new max date of September 10, 2011.

(Resp's Ex. L).

Petitioner, through Attorney Watkins, filed a petition for review with the Commonwealth Court of Pennsylvania. The Commonwealth Court summarized his claims as follows:

> Petitioner repeats his argument that the Board cannot recommit him for both offenses because the lesser offense of harassment merged into the offense of criminal attempt to lure a child into a motor vehicle. Petitioner points out that the Board's regulation is designed to set a presumptive range for the recommitment of convicted parole violators, but he contends that the section was not promulgated to duplicate punishments for charges that merge with each other. Petitioner argues that the presumptive range should be based only upon his conviction of criminal attempt to lure a child into a motor vehicle, which would be six to twelve months.

(Resp's Ex. O, Corbett v. Pennsylvania Bd. of Prob. and Parole, No. 2113 C.D. 2007, slip op. at 4 (Commw. Ct. June 5, 2008)).

Corbett did not raise the specific federal constitutional claims that he now raises with this Court. He argued generally that the Board's decision violated his "constitutional rights," (see ECF No. 1 at ¶ 11(b)(5)), but it does not appear from the information before this Court that he specifically asserted that the Board's action amounted to a due process, double jeopardy, separation of powers, Supremacy Clause, and/or *ex post facto* violations. Corbett contends that he asked Attorney Watkins to raise those specific claims, but that he refused to do so. [ECF No. 1 at ¶ 13(a)-(b); see id. at 4-12].

5

On June 5, 2008, the Commonwealth Court issued a Memorandum Opinion in which it affirmed the Board's decision. The court first addressed Corbett's contention that the Board erred in recommitting him to 18 months of backtime based on an aggregation of the presumptive ranges for both offenses as opposed to the presumptive range for just the offense of Criminal Attempt to Lure a Child In a Motor Vehicle. It determined that that ground for relief was waived because Corbett did not include the issue in the statement of questions involved section of his brief, in violation of Pa.R.A.P. 2116(a).[4] The Commonwealth Court also held in the alternative that the claim had no merit based on the holding in McClinton v. Pennsylvania Board of Probation and Parole, 546 A.2d 759 (Pa. Commw. 1988). (Resp's Ex. O, Corbett, No. 2113 C.D. 2007, slip op. at 4-5).

In McClinton, the jury found the petitioner guilty of the charges of robbery, burglary, terroristic threats and simple assault which were committed in one incident. To comply with its own regulations, the Board recommitted Petitioner before the trial court entered its sentence, which was solely for burglary. The Board aggregated backtime for all four of the offenses and recommitted Petitioner for a period of time that was less than the total aggregate maximum presumptive range but more than the presumptive range for the offense of burglary. The petitioner argued that the Board was only allowed to recommit him for his conviction of burglary because pursuant to Section 3502(d) of the Crimes Code, 18 Pa. C.S. § 3502(d), he could "not be convicted of both burglary and the additional charges, and that,

---

[4] At the time, Pa.R.A.P. 2116(a) provided, in relevant part:

General rule. The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed 15 lines, must never exceed one page, and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.

6

therefore, he [could] only be recommitted for burglary." McClinton, 546 A.2d at 761. The Commonwealth Court affirmed the Board's decision, holding:

> *The General Assembly has given the Board the power to recommit a parolee following a finding of guilt, and the petitioner was found guilty of each offense for which he was assessed backtime.* Accordingly, it is not necessary for the Board to have a final conviction before assessing backtime. *It is likewise unnecessary to determine what constitutes a conviction and how merger affects the assessment of backtime.*

Id. at 178 (emphasis added).

The Commonwealth Court next addressed Corbett's contention that the Board failed to give him credit for all of the time he served under the Board's warrant. It held that this claim was abandoned and waived because Petitioner failed to argue it in his brief. (Resp's Ex. O, Corbett, No. 2113 C.D. 2007, slip op. at 5-6, citing Larry Pitt & Assocs. v. Long, 716 A.2d 695 (Pa. Commw. 1998), American Rock Mechanics, Inc. v. Workers' Compensation Appeal Bd. (Bik), 881 A.2d 54, 56 (Pa. Commw. 2005)).

Corbett claims that he filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. [ECF No. 1 at ¶ 11(c)]. Importantly, however, his contention is not supported by either the Commonwealth Court's docket sheet for his case (No. 2113 C.D. 2007), nor a search of the dockets of the Pennsylvania Supreme Court.[5] Those courts' dockets show that no petition for allowance of appeal was filed.[6]

Having had no success in state court, Corbett seeks relief in federal habeas court. Pending before this Court is his petition for a writ of habeas corpus [ECF No. 1]. Respondents have filed their Answer [ECF No. 6], to which Corbett has filed a Response [ECF No. 10].

---

[5] The state courts' docket sheets are available online at http://ujsportal.pacourts.us/ and this Court may take judicial notice of them.

[6] In any event, Corbett admits that he did not raise the federal constitutional claims at issue here in the petition for allowance of appeal which he alleges that he filed. He states that he instructed Attorney Watkins to raise those claims, but that counsel refused to do so and raised only the claim that the Board erred in failing to give him credit for all time served under its warrant. [See ECF No. 1 at ¶ 11(c); id. at 4-12].

7

### B. Discussion

#### 1. Corbett's Claims Are Procedurally Defaulted

Corbett's claims should be denied because he failed to exhaust his state remedies. As the United States Court of Appeals for the Third Circuit has explained, "[i]t is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), citing 28 U.S.C. § 2254(b)(1)(A). Specifically, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). The petitioner carries the burden of proving exhaustion of all available state remedies. See, e.g., Lambert, 134 F.3d at 513.

To properly exhaust a claim involving a determination by the Parole Board, a habeas petitioner must first seek administrative review with the Board itself, pursuant to 37 Pa. Code § 73.1. Following that administrative appeal, the petitioner must seek review in the Commonwealth Court. 42 Pa.C.S. § 763(a). The petitioner must then seek review in the Pennsylvania Supreme Court. See Williams v. Wynder, 232 F.App'x 177, 180 (3d Cir. 2007) (concluding that the Pennsylvania Supreme Court's Order 218 does not apply to decisions issued by the Commonwealth Court and that "the District Court correctly held that [petitioner] was required to exhaust his available state remedies by filing a petition for allowance of appeal in the Pennsylvania Supreme Court").

Moreover, to "fairly present" a claim for exhaustion purposes, "a petitioner must have presented a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted," McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999), and must

"provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim," Anderson v. Harless, 459 U.S. 4, 6 (1982), quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971). See also Baldwin v. Reese, 541 U.S. 27, 29-34 (2004); Nara v. Frank, 488 F.3d 187, 197-99 (3d Cir. 2007). "It is not sufficient that all the facts necessary to support the federal claim were before the state courts." Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001). For example, a mere "passing reference to a 'fair trial'" is insufficient to put the state court on notice that petitioner is asserting a federal constitutional claim. Id. at 415. "If state courts are to be given the opportunity to correct alleged violations of its prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam). Thus, as the Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Id. at 366.

Corbett did not to exhaust his state court remedies. As set forth above, although he made the very general claim to the Commonwealth Court that his constitutional rights were violated, he did not specifically assert that the Board's action amounted to a due process, double jeopardy, separation of powers, Supremacy Clause, and/or *ex post facto* violation. Moreover, even if he did raise those claims before the Commonwealth Court, his failure to raise them to the Pennsylvania Supreme Court results in a failure to exhaust. See Williams, 232 F.App'x at 180.

Because Corbett failed to exhaust his claims, they are procedurally defaulted. See, e.g., Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000); Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). The doctrine of procedural default also is "grounded in concerns of comity and federalism," Coleman v. Thompson, 501 U.S. 722, 730 (1991), and it bars federal habeas review whenever the petitioner has failed to present a federal claim in the state courts. See, e.g., Lines, 208 F.3d at 162-69.

9

A procedural default may be excused if a petitioner demonstrates "cause" for the default and resulting prejudice. See, e.g., Lines, 208 F.3d at 165. Corbett claims that he asked Attorney Watkins to raise the claims at issue. However, an attorney's decision not to raise a claim is not typically the type of conduct that satisfies the "cause" requirement. As the Third Circuit Court has stated:

> Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. *"[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."* [Murray v. Carrier, 477 U.S. at 486]. Indeed, in Coleman v. Thompson, 501 U.S. 722 [ ] (1991), the Court addressed . . . the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding. The Court, applying Murray v. Carrier, concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice. Coleman, 501 U.S. at 752[.]

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (emphasis added).[7]

In conclusion, because Corbett failed to exhaust his state remedies, his habeas claims are procedurally defaulted. However, even if Corbett could overcome his default, he is not entitled to habeas relief for the reasons set forth below.

### 2. Corbett's Claims Have No Merit

If Corbett's claims were not procedurally defaulted, they still would be denied because they are premised upon the allegation that the Board improperly extended his maximum sentence date and therefore he is now serving time beyond the sentence imposed by the Court of Common Pleas. He is wrong. Although it is well-settled that maintaining an individual in custody beyond the expiration of his

---

[7] Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. It is not applicable to the instant case.

maximum sentence constitutes a violation of his constitutional rights, see, e.g., Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989), the record in this case establishes that the Board correctly recalculated Corbett's maximum sentence date.

As Respondents explain, the Board's calculation in this case is straightforward: Corbett's operative 2-6 year sentence had an effective date of May 13, 2002; thus, his initial maximum date was May 13, 2008. Consequently, Corbett potentially had six years to serve on this sentence. He was paroled from this sentence on March 22, 2004. At that point, he had 1513 days (or 4 years, 1 month, and 21 days) remaining until the expiration of his maximum sentence. (Resp's Exs. I-K, L, O).

After being paroled, Corbett was arrested on new criminal charges on August 7, 2006. He did not post bail on these new charges. (Resp's Ex. F at 2). He subsequently entered a guilty plea on February 6, 2007, and was sentenced on May 2, 2007. (Id. at 7-8). Thereafter, following a revocation hearing, Corbett was recommitted as a convicted parole violator on or about July 20, 2007. Consequently, he was not credited for all time at liberty on parole[8] or in custody because of his new arrest and conviction (that is, from the date of his parole release (March 22, 2004) until he was again available to begin serving the subject sentence (July 20, 2007), which is a period of 3 years, 3 months, and 28 days). (See Resp's Exs. I-K).

It is noted that Corbett was incarcerated from the date of his arrest on the new criminal charges on August 7, 2006, until his return to DOC custody for purposes of recommitment on his original sentence on July 20, 2007, a period of 11 months and 13 days. Because he did not post bail on his new criminal charges in 2006, state law provides that this time must be credited to his new sentence, which

---

[8] Corbett was notified that if convicted of new criminal offenses while on parole, he could be recommitted "with no credit for time at liberty on parole." (Pet's Ex. 8B). See also 61 P.S. § 331.21a (repealed and replaced by 61 Pa.C.S. § 6138 without relevant changes). Pennsylvania law mandates forfeiture of all street time if recommitment is ordered. Id.

will begin on or around September 10, 2011.[9] This follows the applicable Pennsylvania law.

Commonwealth v. Mann, 957 A.2d 746 (Pa. Super. 2008). In Mann, the Superior Court explained:

> While no single case offers a specific, unified, time-served credit application schema, we read [Gaito v. Pa. Bd. of Probation & Parole, 412 A.2d 568, 571 (Pa. 1980), Martin v. Pa. Bd. of Probation & Parole, 840 A.2d 299, 309 (Pa. 2003), and McCray v. Pa. Dept. of Corrections, 872 A.2d 1127, 1133 (Pa. 2005)] together as providing a resolution to the questions of where time-served credits are to be applied and by which adjudicatory body: all time served by a parole violator while awaiting disposition on new charges must be credited to the original sentence if he or she remains in custody solely on a Board detainer. Gaito, *supra*. *If the defendant is incarcerated prior to disposition, and has both a detainer and has failed for any reason to satisfy bail, the credit must be applied to the new sentence by the sentencing court.* See Id.; see Martin, *supra*. In this circumstance, the credit must be applied by the trial court as a sentencing condition, as the Board and the Commonwealth Court have no jurisdiction to alter sentencing conditions on later review. See McCray. If the new sentence is shorter than the time served, the balance can be applied to the original sentence, see Martin, *supra*, but the sentencing court must specify "time served" in the sentencing order for the new offense, so that the Board will be able to apply the credit. See McCray.

Id. at 749 (emphasis added).

Thus, pursuant to applicable state law, Corbett was not credited with the time served in custody following his arrest and conviction on new charges. Rather, his original sentence "restarted" when, following his parole revocation hearing, he next became available to the Board for recommitment on July 20, 2007, when the Board obtained the necessary signatures to recommit him as a convicted parole violator. Because he was not credited with any time served prior to July 20, 2007, his sentence, including his parole violation maximum date of September 10, 2011, has been properly calculated.

### C. Certificate of Appealability

---

[9] At that point, Corbett would have a time credit of 11 months and 13 days (for time spent in custody from his date of arrest on August 7, 2006, until his return to custody on July 20, 2007). According to Respondents, this time must be ordered by the sentencing court for the new convictions at Criminal Docket No. 2178 of 2006. If he has not already done so, Corbett would need to petition that court in order to have the time credited. [ECF No. 6 at 7-8 n.5].

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether Corbett's petition should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 25, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge